FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

13 FEB 27 PM 1:53

OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 8:12 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **PLEA AGREEMENT** |
| MICHAEL D. HAFFKE, | ) | |
| | ) | |
| Defendant. | ) | |

IT IS HEREBY AGREED between the plaintiff, United States of America, through its counsel, Deborah R. Gilg, United States Attorney and Douglas R. Semisch, Assistant United States Attorney, and defendant, Michael D. Haffke, with the advice and consent of James E. Schaefer, counsel for defendant, as follows:

I

## THE PLEA

A.  CHARGE(S) & FORFEITURE ALLEGATION(S).

Defendant agrees to waive indictment and plead guilty to Count I of an Information which charges a violation of Title 18, United States Code, Section 371. The United States Attorney agrees that no forfeiture count will be included in the Information. The United States Attorney further agrees that no seizure warrant will be sought in connection with the criminal investigation and prosecution of the matters giving rise to the aforesaid Information as described in Section II B, paragraphs 1-19 below. The aforesaid agreement not to seize assets includes any interest the defendant may have in gold or silver bars or certificates.

II

## NATURE OF THE OFFENSE

A.  ELEMENTS EXPLAINED.

Defendant understands that the offense to which defendant is pleading guilty has the following elements:

1

1. The defendant agreed with one or more persons to defraud the United States;

2. The defendant knowingly and voluntarily participated in the conspiracy with the intent to defraud the United States.

3. The defendant or one of the co-conspirators committed an overt act in furtherance of the conspiracy.

B.   ELEMENTS UNDERSTOOD AND ADMITTED - FACTUAL BASIS.

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each of the elements of the crime, and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed:

1. On or about January 1, 2000, the defendant, MICHAEL D. HAFFKE, falsely advised his tax return preparer that he had sold his business, Haffke's Landscape and Stone, and all related assets when, in fact, the defendant still owned and controlled the business and its assets.

2. On or about January 5, 2000, the defendant purported to transfer all of the business assets of Haffke's Landscape and Stone, including vehicles, equipment and real estate, to entities called Fortress Management, Ideal Enterprises, and Black Lab Enterprises. The defendant thereafter provided copies of bills of sale to his tax return preparer.

3. On or about December 31, 1999, the defendant paid an attorney to open a bank account at Compass Bank, fna Firstier Bank, in Colorado for Continental Management, an unincorporated business operation.

4. On January 3, 2000, the defendant filed and caused to be filed a Certificate of Limited Partnership with the Secretary of State's Office in Nebraska for The Rock Place, L.P., with the defendant listed as the general partner. The defendant caused the certificate to be amended on December 14, 2000 to list the general partners as the defendant and Four Corners Investment Holdings, LLC. The defendant caused a second amendment to be filed on December 22, 2000 to list the general partner as just Four Corners Investment Holdings, LLC. The defendant signed the certificate for the general partner using the fictitious name of Larry Frost.

2

5. On January 5, 2000, the defendant caused a Warranty Deed to be filed with the Register of Deed's Office in Douglas County, Nebraska transferring property known as 3204 and 3205 S. 204th Street from the defendant to Fortress Management as trustee for Western View Holdings. This is the property where the defendant conducted his rock business.

6. On March 10, 2003, the defendant caused the real estate known as 3205 S. 204th Street to be sold to a third party. The defendant received a cashier's check made payable to Western View Holdings in the amount of $466,200.58 as part of the proceeds of said sale. This cashier's check was endorsed by the defendant with a notation "Reassign to Continental Management" and was deposited by the defendant into the Colorado bank account for Continental Management on March 11, 2003.

7. On September 9, 2004, the defendant paid an attorney in Colorado to open another nominee bank account for him in the name of Bitter Root Management. The defendant was not listed as a signor on the account.

8. On October 18, 2005, the defendant paid an attorney in Colorado to open another bank account in the name of Marc Anthony Management with only the attorney having signature authority.

9. On various dates in 2003 through 2007, the defendant directed the attorney in Colorado to sign or cause to be signed blank checks on the accounts of Continental Management, Bitter Root Management and Marc Antony Management and to have those checks sent to the defendant in Nebraska for his personal and business use.

10. On or about May 17, 2007, the defendant sent a letter to Gateway Bank advising the bank that the IRS did not have authority to issue a summons to the bank for production of records relating to The Rock Place, and further directing the bank not to respond to the summons.

11. On March 6, 2007, the defendant requested the attorney in Colorado to transfer $400,000 from the Continental Management account at Compass Bank to an account at BNF Gladius Management, a precious metals investment company.

12. In April of 2007, the defendant and a co-conspirator dissolved the partnership called The Rock Place, LP and formed and subsequently filed Articles of Organization for The Rock Place, LLC in the State of Florida.

3

13. In 2007, the defendant caused co-conspirators to form TLD Management, Cerulean LLC, and Loadstone Investments LLLC to replace nominee entities that were previously used. Bank accounts were opened for said entities and the defendant's co-conspirators were listed as the persons with signature authority.

14. On April 18, 2007, the defendant caused the attorney in Colorado to transfer $261,551.21, consisting of all remaining funds in the Continental Management, Bitter Root Management, and Marc Anthony Management accounts at Compass Bank, to an account at BNF Gladius Management. The defendant then caused the aforesaid accounts at Compass Bank to be closed.

15. From on or about January 1, 2003 through on or about April 15, 2009, the defendant worked at The Rock Place under the name of Tom Anderson.

16. Throughout 2003 through 2007, an unnamed co-conspirator wrote checks from The Rock Place account to various nominee entities created by the defendant for fictitious lease and/or loan payments. For 2003, 2004, 2005, 2006, and 2007, these amounts totaled $281,842.05, $517,398.68, $478,249.11, $409,315.20, and $292,740.00 respectively. The majority of the payments for 2003 through 2006 were deposited into the Compass Bank accounts for Continental Management, Bitter Root Management and Marc Anthony Management. The majority of the payments for 2007 were deposited into the accounts for TLD Management, Cerulean LLC, and Loadstone Investments LLC.

17. From 2003 through 2007, but excluding 2006, an unnamed co-conspirator provided the false expenses listed in paragraph 16 above to the tax return preparer for The Rock Place to be used in preparing the Form 1065 Partnership Tax Returns for The Rock Place. This resulted in the taxable income of The Rock Place to be artificially lower than the true taxable income of the business.

18. The Form 1065 Partnership Tax Returns for The Rock Place were just informational returns which reflected the purported income and which passed the taxable income to the limited partners. However, none of the purported partners of The Rock Place, nor any of the nominee entities utilized by the defendant filed any income tax returns for the period 2003 through 2007.

19. The defendant did not file any Form 1040 Individual Income Tax Returns for

4

calendar years 2003 through 2007 until calendar year 2012.

## III

## PENALTIES

A.  Defendant understands that the crime to which defendant is pleading guilty carries the following penalties:

1. A maximum 5 years in prison;
2. A maximum $ 250,000 fine;
3. A mandatory special assessment of $100; and
4. A term of supervised release of up to 3 years. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring defendant to serve in prison all or part of the term of supervised release.
5. Possible ineligibility for certain Federal benefits.

## IV

## COOPERATION

The defendant has expressed a desire to provide substantial assistance to the United States in the investigation and prosecution of others. The United States has made no evaluation whether the cooperation, if any, will be "substantial" or whether it will merit any downward departure to reduce defendant's sentence.

A.  The defendant shall truthfully answer all questions asked of the defendant by the United States and/or law enforcement agents, and shall truthfully disclose and volunteer all information regarding the defendant's activities and that of others in all criminal matters of which the defendant currently has knowledge, or hereafter acquires knowledge. The defendant shall not withhold any information. The defendant shall neither protect nor harm any person or entity through false information or omission, nor falsely implicate any person or entity. The defendant shall commit no crimes whatsoever. The defendant shall furnish and disclose the location of any requested documents, items or electronically stored information in the defendant's custody, possession or control or of which the defendant has knowledge. The defendant shall accompany agents of the United States and/or agents of state or local law

5

enforcement agencies to any location of their choosing in order to accomplish full disclosure. The defendant agrees to be interviewed by law enforcement officers any time after execution of this agreement. Presence of defense counsel is specifically waived at any such interview. The United States will notify defense counsel, when practical to do so, of any such interview prior to the interview. The defendant shall truthfully testify, if requested, regarding any matters about which the United States may inquire. If the defendant's continuing cooperation requires the approval of the Court, the defendant agrees to actively assist in the acquisition of such approval.

  B. Any cooperation provided by the defendant will be considered by the United States under U.S.S.G. § 5K1.1, and/or, separately, under 18 U.S.C. § 3553(e), and/or Rule 35(b) of the Federal Rules of Criminal Procedure (after sentencing), in determining whether a motion should be filed to reduce the defendant's sentence. The United States will not consider filing a motion to reduce the defendant's sentence until the defendant's cooperation has been completed. The defendant will not challenge the decision not to file a motion pursuant to U.S.S.G. § 5K1.1 and/or 18 U.S.C. § 3553(e), and/or Rule 35(b) of the Federal Rules of Criminal Procedure (after sentencing) before completion of the defendant's cooperation. If the United States does not file a motion to reduce the defendant's sentence for the defendant's cooperation, the defendant waives the defendant's right to challenge that decision by any means, no matter how entitled, except upon a substantial threshold showing by the defendant that any such decision was based upon an unconstitutional motive related to the defendant's race, religion, gender, or national origin, or upon an appropriate showing of a violation of the defendant's Sixth Amendment Right to Counsel.

  C. Nothing which the defendant says pursuant to this agreement may be used against the defendant, so long as the defendant abides by all of the terms of this agreement. The United States may, however, make derivative use of and may pursue any investigative leads suggested by any statements made by or other information provided by the defendant.

## V
## AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE
## DISTRICT OF NEBRASKA

This plea agreement is limited to the United States Attorney's Office for the District of Nebraska, and cannot bind any other federal, state or local prosecuting, administrative, or

regulatory authorities. Unless otherwise stated, all agreements as to sentencing issues are made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

## VI
## PARTIES' SENTENCING RECOMMENDATIONS

A.     SENTENCING GUIDELINE CALCULATIONS.

Although the parties understand that the Guidelines are advisory and only one of the factors the court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments and Departures. Unless otherwise stated, all agreements as to sentencing issues are made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

1. The parties agree that the defendant's base offense level under U.S.S.G. §2T1.1 is calculated under §2T4.1 based upon the tax loss involved, and that defendant should be held responsible, beyond a reasonable doubt, for an amount of loss of $422,350 with a resulting Guideline base offense level of 20. There is a 2 level increase under §2T1.1(b)(2) for use of sophisticated means and that the defendant should receive a 3 level reduction under §5K2.0 so that the defendant's total offense level, before any adjustment for acceptance of responsibility, should be 19 and that the defendant's final offense level after credit for acceptance of responsibility should be 16.

2. If the defendant is found to be entitled to an offense level reduction under U.S.S.G. 3E1.1(a) for acceptance of responsibility, the United States hereby moves that the court reduce the defendant's offense level by one additional level, pursuant to U.S.S.G. § 3E1.1(b), if that paragraph otherwise applies.

3. The parties agree that if the defendant is determined to be a career offender pursuant to U.S.S.G. § 4B1.1(a), the applicable offense level shall be determined pursuant to U.S.S.G. § 4B1.1(b). Furthermore, the defendant will be in Criminal History Category VI if the defendant is determined to be a career offender..

B.     ACCEPTANCE OF RESPONSIBILITY.

Notwithstanding paragraph A above, the government will not recommend any adjustment for Acceptance of Responsibility if defendant:

        1.     Fails to admit a complete factual basis for the plea at the time it is

        entered, or

2. Denies involvement in the offense, gives conflicting statements about that involvement, or is untruthful with the court or probation officer, or
3. Fails to appear in court, or
4. Engages in additional criminal conduct, or
5. Attempts to withdraw the plea, or
6. Refuses to abide by any lawful court order, or
7. Contests or assists any third party in contesting the forfeiture of property(ies)seized or forfeited in connection with this case.

**The parties further agree the defendant will make no "blanket" objections to the criminal history calculation (specific objections based on stated grounds are permitted). Objections to criminal history on the basis that the defendant was not the person who was convicted of the offense(s) described in the presentence investigation report or on the basis that the defendant was not represented by counsel in connection with such conviction(s), if determined to be unfounded, are evidence the defendant has not accepted responsibility and the parties agree no credit for acceptance of responsibility should be given.**

C.    ADJUSTMENTS, DEPARTURES & REDUCTIONS UNDER 18 U.S.C. § 3553.

The parties agree that defendant may request or recommend additional downward adjustments, departures, including criminal history departures under U.S.S.G. § 4A1.3, and sentence reductions under 18 U.S.C. § 3553, and that the government may oppose any such downward adjustments, departures, and sentence reductions not set forth in Section V, paragraph A above.

The parties agree that the 3 level reduction under §5K2.0, as set out in paragraph A(1) of section VI above, is expressly conditioned upon: (a) the defendant's having filed Form 1040 returns for calendar years 2003 through 2007 which effectively corrected false expenses listed on the Form 1065 returns for the business partnership known as "The Rock Place;" (b) paying the tax due as listed on said Form 1040 returns; and ( c) reaching an agreement with the IRS to resolve an issue regarding unreported cash receipts in excess of $100,000 per year for the years

8

2006 and 2007 by the business known as "The Rock Place." Specifically, the defendant agrees that he will meet with the IRS and provide documentation showing any previously unreported cash expenses The Rock Place may have had to offset any or all of the unreported cash income referenced above for 2006 and 2007. Once the outstanding balances, if any, of any excess cash income have been agreed upon, the defendant will enter into an agreement with the IRS that his Form 1040 returns for 2006 and 2007 will be amended accordingly to reflect such additional income and any corresponding tax liability. The defendant may enter into any sort of payment plan agreed upon with IRS Collection with respect to payment of this additional tax liability. The defendant further agrees and acknowledges that he will be required to maintain records reflecting cash receipts and cash disbursements for the business known as The Rock Place and that he will provide copies of same to the IRS upon request.

D.   CRIMINAL HISTORY.

The parties have no agreement concerning the defendant's Criminal History Category, except that if defendant is determined to be a Career Offender, the parties agree that the defendant is automatically a Criminal History Category VI pursuant to U.S.S.G. § 4B1.1(b).

E.   "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION.

The parties agree that the facts in the "factual basis" paragraph of this agreement, if any, are true, and may be considered as "relevant conduct" under U.S.S.G. § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

The parties agree that all information known by the office of United States Pretrial Service may be used by the Probation Office in submitting its presentence report, and may be disclosed to the court for purposes of sentencing.

F.   PARTIES' RECOMMENDATION REGARDING CUSTODY.

The Government will recommend that defendant be sentenced to the low end of the advisory guideline range. Nothing in this agreement prevents the defendant from seeking a sentence outside the applicable guideline range.

G.  STIPULATED REMOVAL.

If defendant is not a United States citizen, or national, either before or immediately following sentencing, defendant agrees to an order of removal from the United States entered by Executive Office for Immigration Review or authorized Department of Homeland Security official. Defendant understands that defendant will not be removed until defendant has served any criminal sentence imposed in this or any other case. Defendant further waives any right to appeal, reopen or challenge the removal order.

VII

**DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK**

The defendant hereby knowingly and expressly waives any and all rights to appeal the defendant's conviction, including any restitution order in this case, including a waiver of all motions, defenses, and objections which the defendant could assert to the charges or to the Court's entry of Judgment against the defendant, and including review pursuant to 18 U.S.C. § 3742 of any sentence imposed. The defendant expressly reserves the right to appeal the sentence imposed in this case.

The defendant further knowingly and expressly waives any and all rights to contest the defendant's conviction in any post-conviction proceedings, including any proceedings under 28 U.S.C. § 2255, except:

 (a) The right to timely challenge the defendant's conviction should the Eighth

Circuit Court of Appeals or the United States Supreme Court later find that the charge to which the defendant is agreeing to plead guilty fails to state a crime.

(b) The right to seek post conviction relief based on ineffective assistance of counsel, or prosecutorial misconduct, if the grounds for such claim could not be known by the defendant at the time the Defendant enters the guilty plea contemplated by this plea agreement.

If defendant breaches this plea agreement, at any time, in any way, including, but not limited to, appealing or collaterally attacking the conviction, the United States may prosecute defendant for any counts, including those with mandatory minimum sentences, dismissed or not charged pursuant to this plea agreement. Additionally, the United States may use any factual admissions made by defendant pursuant to this plea agreement in any such prosecution.

## VIII

## BREACH OF AGREEMENT

Should it be concluded by the United States that the defendant has committed a crime subsequent to signing the plea agreement, or otherwise violated this plea agreement, the defendant shall then be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted. Any such prosecution(s) may be premised upon any information, statement, or testimony provided by the defendant.

In the event the defendant commits a crime or otherwise violates any term or condition of this plea agreement, the defendant shall not, because of such violation of this agreement, be allowed to withdraw the defendant's plea of guilty, and the United States will be relieved of any obligation it otherwise has under this agreement, and may withdraw any motions for dismissal of charges or for sentence relief it had already filed.

## IX

## SCOPE OF AGREEMENT

A. This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral.

B. By signing this agreement, the defendant agrees that the time between the date the defendant signs this agreement and the date of the guilty plea will be excluded under the Speedy Trial Act. The defendant stipulates that such period of delay is necessary in order for the defendant to have opportunity to enter the anticipated plea of guilty, and that the ends of justice served by such period of delay outweigh the best interest of the defendant and the public in a speedy trial.

C. The United States may use against the defendant any disclosure(s) the defendant has made pursuant to this agreement in any civil proceeding. Nothing contained in this agreement shall in any manner limit the defendant's civil liability which may otherwise be found to exist, or in any manner limit or prevent the United States from pursuing any applicable civil remedy, including but not limited to remedies regarding asset forfeiture and/or taxation.

D. Pursuant to 18 U.S.C. § 3013, the defendant will pay to the Clerk of the District Court the mandatory special assessment of $100 for each felony count to which the defendant pleads guilty. The defendant will make this payment at or before the time of sentencing.

E. By signing this agreement, the defendant waives the right to withdraw the defendant's plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d). The defendant may only withdraw the guilty plea in the event the court rejects the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(5).

F. This agreement may be withdrawn by the United States at any time prior to its being signed by all parties.

X

## MODIFICATION OF AGREEMENT MUST BE IN WRITING

This agreement ends all plea discussions. No promises, agreements or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties.

XI

## DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, defendant certifies that defendant read it (or that it has been read to defendant in defendant's native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

## XII

## DEFENDANT SATISFIED WITH COUNSEL

Defendant has consulted with counsel and is satisfied with counsel's representation.

Date: 2/19/13

UNITED STATES OF AMERICA
DEBORAH R. GILG
United States Attorney

DOUGLAS R. SEMISCH
Assistant U.S. Attorney

Date: 2/12/2013

By MICHAEL D. HAFFKE
Defendant

Date: 2.12.2013

JAMES E. SCHAEFER
Attorney for Defendant

14